IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **PLAQUEMINE PLAZA HOLDINGS, LLC** | **CIVIL ACTION NO.: 3:21-cv-229** |
| **versus** | **JUDGE:** |
| **IBERVILLE PARISH SHERIFF'S OFFICE AND BRETT STASSI, in his official capacity as Sheriff for Iberville** | **MAGISTRATE JUDGE:** |

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**NOW INTO COURT**, through undersigned counsel, comes Plaquemine Plaza Holdings, LLC (hereinafter sometimes referred to as "Petitioner"), and for its Complaint, alleges, as follows:

**THE PARTIES**

1.

Petitioner herein is Plaquemine Plaza Holdings, LLC, a juridical person domiciled in the City of Baton Rouge, Parish of East Baton Rouge, Louisiana. Petitioner is a "person" within the meaning of 42 U.S.C. § 1983 and has standing to sue.

2.

The defendants herein are:

a. Iberville Parish Sheriff's Office (hereinafter sometimes referred to as the "Iberville Sheriff's Office" or "Defendant") is a body corporate and political subdivision of the State of Louisiana, within the Parish of Iberville. The Iberville Sheriff's Office is able to be sued in its own name. Petitioner alleges that the Iberville Sheriff's Office is a "person" and "state actor" within the meaning of 42 U.S.C. § 1983, acting under color of state law.

1

b.     Brett Stassi (hereinafter sometimes referred to as "Stassi" or "Defendant") is a person of the full age of majority and is the duly elected Sheriff of Iberville Parish. Stassi is sued in both his official and individual capacities. Petitioner alleges that Stassi is a law enforcement official of Iberville Parish and was, at all material times, the individual charged with the duty to grant all the superintending control of all officers and affairs of the Iberville Sheriff's Office, and takes care that the laws and ordinances are executed; and has the authority to render final decisions regarding power to initiate enforcement actions, such as any investigations or the referral of any results of such investigations to the District Attorney or a grand jury for indictment. Petitioner alleges that Stassi is and was, at all material times, a "state actor" within the meaning of 42 U.S.C. § 1983 and was acting under color of state law.

## JURISDICTION AND VENUE

3.

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983.

4.

Venue is proper in this district and division under 28 U.S.C. § 1391(b), because the underlying acts and conduct violating applicable laws and constitutional rights occurred in this district, and/or each Defendant conducts affairs in, or is an inhabitant of, resides in, or has an agent in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

5.

Petitioner is a limited liability company registered to do business in the State of Louisiana and domiciled in the City of Baton Rouge, Parish of East Baton Rouge, Louisiana. Petitioner

owned and operated Iberville Oaks Nursing & Rehab (hereinafter "Iberville Oaks") from 1988 until 2020.

6.

Iberville Oaks was, at all relevant times, similarly situated as Legacy Nursing and Rehabilitation of Plaquemine (hereinafter "Legacy Nursing Home"). Iberville Oaks and Legacy Nursing Home both do business in Plaquemine, Iberville Parish, Louisiana and, in fact, are separated by less than a quarter mile. Both facilities are nursing homes which provide long-term residential care to substantially similar patient populations, namely, the elderly and infirmed.

7.

Defendant Stassi was elected to his role as Iberville Sheriff in 2012 after working for more than three decades as a detective for the District Attorney's Office for Louisiana's 18th Judicial District. In 2015, Stassi was reelected unopposed. In 2019, he was reelected again, after defeating challenger Darren Bourgeois.

8.

Between January and May of 2019, the Iberville Sheriff's Office received seven (7) 911 calls from and/or concerning Iberville Oaks, three (3) of which appear to have derived from the same source relative to a single complaint.

9.

Between January and May of 2019, the Iberville Sheriff's Office received seven (7) 911 calls from and/or concerning Legacy Nursing and Rehabilitation of Plaquemine ("Legacy Nursing Home"), all of which appear to have derived from different sources and/or appear to concern distinct complaints.

10.

In 2018, the year prior, the Iberville Sheriff's Office received a total of twelve (12) 911 calls from and/or concerning Iberville Oaks.

11.

During that same period in 2018 the Iberville Sheriff's Office received a total of fourteen (14) 911 calls from and/or concerning Legacy Nursing Home.

12.

On June 28, 2019, the news station WBRZ2 published an investigative report which suggested that an inordinate number of complaints had been filed regarding Iberville Oaks.

13.

Stassi participated in an interview sometime prior thereto, which interview first aired on June 28, 2019. Stassi stated during the interview that, in response to the complaints, he called the Louisiana Department of Health ("LDH") to notify them of people "not being looked after properly." Stassi also suggested that residents of Iberville Oaks went "uncared for when their needs are so great," describing it as "astonishing." Stassi unequivocally stated that he was investigating Iberville Oaks, planned to present his investigation to the District Attorney's Office, and might also send it to a "grand jury" for deliberation.

14.

On July 2, 2019, WBRZ2 published a follow-up news segment, during which the news station produced a redacted copy of an internal copy of a complaint filed with the Iberville Sheriff's Office on July 1, 2019, the day prior. On information and belief, Defendants provided WBRZ2 with this report.

15.

Stassi commented for the July 2, 2019 television news segment suggesting that Iberville Oaks residents were deprived of "the basic needs of just taking care, making sure they're getting their meds, making sure they're bathed, clean, and ready for bed, fresh linens," which Stassi characterized as "unacceptable."

16.

On information and belief, Stassi had no basis for these statements other than unsubstantiated complaints which had yet to be meaningfully investigated and, therefore, on information and belief, acted recklessly and/or with deliberate indifference, as more fully set forth below.

17.

Also on July 2, 2019, a different news station, WAFB9, published a televised news segment on Iberville Oaks for which Stassi also conducted a separate interview. During that interview, Stassi asserted that "[i]t's very uncommon for deputies to have to go to a nursing home, getting calls from the family, and in fact, sometimes patients." Stassi also suggested his office had received a substantial number of concerning calls "back to back to back," which he described as "out of the ordinary."

18.

In response to Stassi's televised comments regarding his purported criminal investigation, which were made during his political campaign for reelection, several essential employees of Iberville Oaks became concerned and abruptly resigned from their positions. Petitioner alleges that Defendants' comments were the primary cause of their resignations.

19.

On information and belief, Stassi's televised comments were made knowingly before any meaningful investigation was conducted.

20.

LDH conducted subsequent visits to Iberville Oaks during which several deficiencies were identified; however, LDH Deputy Secretary Mark Thomas stated, during a July 8, 2019 WAFB9 interview in response to a question about the significance of those deficiencies, that "[t]here's no life-threatening violation there."

21.

On information and belief, Defendants' public, televised comments resulted in significant public pressure on LDH, resulting in disparate treatment by LDH compared to similarly situated nursing home facilities.

22.

In 2018, LDH identified a total of nine (9) deficiencies at Iberville Oaks, and a total of eleven (11) at Legacy Nursing Home. Between January and June of 2019, LDH identified a total of nine (9) deficiencies at Iberville Oaks, and a total of seven (7) deficiencies at Legacy Nursing Home.

23.

Despite receiving more 911 calls from and/or concerning Legacy Nursing Home in 2018, and an equal amount between January and May of 2019, Defendants: never conducted a televised interview regarding Legacy Nursing Home; never made any public statements regarding Legacy Nursing Homes; never released any official statements regarding Legacy Nursing Home; on

information and belief, never reported Legacy Home to LDH or other enforcement or investigative agencies; and never conducted an investigation into Legacy Nursing Home.

24.

Petitioner is informed and believes that Stassi received a generous campaign contribution from Legacy Nursing Home just months prior to these events.

25.

Despite similar resulting deficiencies prior to the events described herein between Iberville Oaks and Legacy Nursing Home, LDH informed Petitioner in 2019 that it must either consent to a Settlement Agreement (the "Settlement Agreement") or risk loss and/or non-renewal of its license.

26.

On information and belief, LDH's disparate treatment of Iberville Oaks was motivated by political and public pressure caused by Stassi's televised interviews and public comments regarding Iberville Oaks.

27.

Recognizing that the public comments of Stassi coupled with the resultant unfair treatment by LDH would inhibit his ability to operate Iberville Oaks, Petitioner made the decision to divest himself of ownership thereof, and began searching for a qualified purchaser.

28.

On October 2, 2020, Petitioner filed public records requests with the Iberville Sheriff's Office and LDH seeking information regarding complaints against both Iberville Oaks and Legacy Nursing Home.

29.

On November 16, 2020, Petitioner received a response pursuant to its public records request from the Iberville Sheriff's Office, from which Petitioner was first able to ascertain the substantially similar number of complaints made with the Iberville Sheriff's Office regarding both Iberville Oaks and Legacy Nursing Home, and that the enforcement actions taken against Iberville Oaks were selective in nature.

30.

On approximately January 20, 2021, Petitioner received a response pursuant to its public records request from LDH, from which Petitioner was first able to ascertain the substantially similar number of complaints made with LDH regarding both Iberville Oaks and Legacy Nursing Home, and that Iberville Oaks received disparate treatment despite these similarities. Petitioner, therefore, alleges that the instant claims did not begin to accrue, at the earliest, until January 20, 2021.

31.

On information and belief, Defendants selectively chose to take enforcement actions against Iberville Oaks by opening an investigation into Iberville Oaks, and reporting unsubstantiated claims to LDH, the State Police, the Attorney General's Office, and the District Attorney.

32.

On information and belief, Defendants did not institute any such enforcement actions in response to the similar number of complaints received regarding Legacy Nursing Home. Defendants did not report Legacy Nursing Home to LDH, the State Police, the Attorney General's Office, or the District Attorney. Defendants also never made public, televised comments regarding

the number of complaints from Legacy Nursing Home, suggested criminality prior to conducting any meaningful investigation, or publicly stated that the matter would be referred to the District Attorney or a grand jury for possible indictment.

33.

Defendants' conduct forced Petitioner to divest himself of a valuable asset, and the pressure Defendants' comments placed on LDH, resulting in LDH's disparate treatment of Iberville Oaks, resulted in the ultimate sale of the same to be at a price substantially lower than its actual value as well as substantial loss of profits.

34.

On information and belief, Defendants knew prior to Stassi's public comments that the Iberville Sheriff's Office regularly received calls from nursing home patients, contrary to Stassi's assertions.

35.

On information and belief, Stassi was at all times aware that it is usual law enforcement policy and/or practice not to comment on the details of ongoing investigations, especially implying guilt, but nevertheless did so without actual knowledge as to the veracity of the accusations he gave merit to. Petitioner alleges that this conduct, as with the public statements alleged hereinabove, was reckless and/or constituted deliberate indifference.

36.

On information and belief, Defendants' enforcement actions were not taken pursuant to any legitimate need; instead, Defendants were motivated by illegitimate animus, namely, Stassi's reelection prospects and campaign contributions by a competitor. Defendants' illegitimate animus

is evidenced by the selective enforcement actions taken against one facility, Iberville Oaks, but not another similarly situated facility, Legacy Nursing Home.

37.

On information and belief, Defendants' selective enforcement actions against Iberville Oaks were taken pursuant to reasons of personal nature to Stassi and unrelated to the official duties of Defendants' position.

### COUNT I – EQUAL PROTECTION CLAIM UNDER 42 U.S.C. § 1983

38.

Petitioner repeats, re-alleges, and incorporates, by reference, all of the preceding allegations of this Complaint.

39.

Petitioner alleges that it possessed the right, guaranteed by the Fourteenth Amendment of the United States Constitution, to equal protection of the laws. Petitioner further alleges that Defendants had knowledge of the above right under the Constitution.

40.

Petitioner alleges that Defendants violated Petitioner's constitutional right to equal protection by undertaking selective enforcement actions against Petitioner's facility, Iberville Oaks, by publicly alleging that residents were "uncared for" based only on unsubstantiated and uninvestigated complaints, by reporting alleged but unsubstantiated wrongdoing to LDH, the State Police, and the Attorney General's Office, by publicly suggesting criminal conduct and an incipient indictment prior to conducting any meaningful investigation, and by subsequently opening an investigation into Iberville Oaks which was the direct cause of significant economic

harm, yet intentionally treating other similarly situated facilities differently with respect to the aforementioned enforcement actions, namely Legacy Nursing Home.

41.

Petitioner alleges that the actions of Stassi and the Iberville Sheriff's Office caused Petitioner to suffer significant harm, namely the forced closure and sale, at a below-market value, of an otherwise profitable and legally compliant nursing home facility. Again, Petitioner alleges that, at all relevant times, Legacy Nursing Home was similarly situated to Iberville Oaks, and that Defendants were fully aware that a similar number of calls and complaints had been levied against both facilities. Nevertheless, Defendants specifically chose to pursue their selective enforcement actions against Petitioner's facility alone.

42.

Petitioner further alleges that Defendants' adverse actions were substantially motivated by illegitimate animus wholly unrelated to Defendants' duties; specifically, Petitioner alleges that Defendants' selective enforcement actions were contrived to benefit Stassi politically and/or motivated by the illegitimate animus of Stassi's desire to give preferential treatment to Legacy Nursing Home due to its significant contribution to Stassi's campaign only months prior to his publicly televised comments. *See Shipp v. McMahon*, 234 F.3d 907 (5th Cir. 2000), *overruled on other grounds by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002).

43.

Petitioner alleges that there was no rational basis for Defendants' selective enforcement actions.

44.

Petitioner alleges that Defendants' actions were both reckless and malicious, entitling Petitioner to punitive damages as to Sheriff Stassi, in his individual capacity.

**COUNT II –DUE PROCESS CLAIM UNDER 42 U.S.C. § 1983**

45.

Petitioner repeats, re-alleges, and incorporates, by reference, all of the preceding allegations of this Complaint.

46.

Petitioner alleges that it possessed the fundamental rights to due process and equal protection of the law, a fundamental right to utilize its property for economically viable and legal purposes without arbitrary and capricious interference, and a fundamental right to liberty and property interests in its business and the reputation thereof, under the Constitution.

47.

Petitioner alleges that Defendants had knowledge of the above rights under the Constitution.

48.

Petitioner alleges that Defendants actions, as set forth herein, intentionally deprived Petitioner of these rights by means that were not only arbitrary and capricious, but indeed would shock the conscience.

49.

Specifically, Petitioner alleges that, on information and belief, Stassi, for purposes of personal gain unrelated to official duties in his capacity as sheriff, knowingly or with reckless disregard for the truth, did publicly state via multiple televised interviews information regarding

Iberville Oaks that he knew to be false and/or unsubstantiated, suggested criminality and the possibility of indictments in a premature manner wholly inconsistent with the Iberville Sheriff's Office policies and/or ordinary practices, intentionally sought to benefit from the "free media" by depriving Petitioner of its fundamental rights to due process of law, equal protection of the law, and the use the right to life, liberty, and property.

50.

Petitioner further alleges the Defendants' public statements constituted false factual representations of wrongdoing by Petitioner that resulted in a stigma and significantly altered, if not eviscerated altogether, Petitioner's liberty and/or property interest in Petitioner's reputation.

51.

Specifically, Petitioner alleges that, on information and belief, Stassi knew or should have known that his assertions regarding the frequency and severity of calls were not "uncommon" or "out of the ordinary," despite his publicly televised comments to the contrary. Petitioner alleges that Defendants received substantially the same or similar number and nature of calls and complaints regarding other similarly situated facilities, but nevertheless effectively characterized those pertaining to Petitioner as extraordinary. Petitioner alleges that Stassi knew or should have known that the "back to back to back" calls concerned the same events and/or complainants, and had not been substantiated or investigated when he made publicly televised factual assertions that Petitioner's residents were "not being looked after properly," went "uncared for," treated in an "unacceptable" manner.

52.

Petitioner alleges that Defendants' conduct is of the sort that would "shock the conscience," and was not rationally related to any legitimate governmental interest.

## DEMAND FOR JURY TRIAL

Petitioner hereby demands a jury trial in this action pursuant to Federal Rules of Civil Procedure, Rule 38.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner prays for judgment in his favor and against Defendants, jointly and severally, as follows:

1. For compensatory general, special, and economic damages in an amount according to proof;

2. For punitive damages against all Defendants in their individual capacities;

3. For attorney's fees in accordance with any and all statutes and laws, including, without limitation, those attorney's fees pursuant to 42 U.S.C. § 1988.

4. For costs incurred herein; and

5. For such other and further relief as this court may deem just and proper.

**RESPECTFULLY SUBMITTED BY:**

*By: /s/ Stephen M. Gelé*
**Randall A. Smith, T.A. (No. 2117)**
**Stephen M. Gelé (No. 22385)**
   -Of-
**SMITH & FAWER L.L.C.**
201 St. Charles Ave., Suite 3702
New Orleans, LA 70170
Telephone: (504) 525-2200
Facsimile: (504) 525-2205
sgele@smithfawer.com

*Attorneys for Petitioner*
**Plaquemine Plaza Holdings, LLC**